CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 22 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SULEYMAN CILIV, d/b/a 77 CONSTRUCTION CONTRACTING AND TRADING COMPANY, | Civil Action No.: 7:12-cv-290 |
| Plaintiff, | **Memorandum Opinion** |
| v. | Hon. James C. Turk |
| UXB INTERNATIONAL, INC., | Senior United States District Judge |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss Counts 2 and 3 and to Strike Count 3 of the Complaint. ECF No. 4. Defendant moves to dismiss the *quantum meruit* claim in Count 2 because it is irreconcilable with the breach of contract claim in Count 1. Defendant moves to dismiss Count 3 because there is no private right of action to enforce a violation of the Federal Acquisition Regulations. For the reasons set forth below, the Court **GRANTS** the Motion to Dismiss as to Counts 2 and 3, and **DISMISSES AS MOOT** the Motion to Strike Count 3.

I.  FACTS

The facts, at this stage, are straightforward. Accepting the well-pled facts as true, Defendant UXB International, Inc. ("UXB" or "Defendant") is a prime contractor that entered into a prime contract with the U.S. Government to build all or part of the Bagram Air Force Base in Afghanistan. Pursuant to this prime contract, UXB entered into a subcontract with Plaintiff ("77 Construction" or "Plaintiff") for construction services. Pursuant to the prime contract, the subcontract, or both, UXB would submit purchase orders to 77 Construction detailing the parameters of the work that it should complete. When 77 Construction completed the work, it

1

would submit an invoice to UXB, who would in turn submit that and other invoices to the federal government for payment. When paid by the government, UXB would forward the requisite payment due to 77 Construction.

Over time, a dispute arose about the work performed by 77 Construction, leading UXB to withhold money from 77 Construction out of fear that the federal government would not ultimately pay for the completed work once it performed the final audit of the prime contract. The final audit requires documentation—such as timesheets, work logs, and receipts for purchases—for all work done. 77 Construction had not submitted, and apparently is still unable to produce, this documentation. However, 77 Construction is not required to provide documentation upon the submission of the invoices; it must merely submit the documentation before the final audit.

Plaintiff claims that it has submitted invoices totaling $4,494,413.81 and has been paid only $3,512,592.68, with the total amount owed being $981,821.13. With the final audit pending, UXB is holding this amount to protect itself against the possibility that it will have to return the money already paid for the 77 Construction expenses. In fact, UXB claims that 77 Construction may ultimately owe UXB money if the federal government pays UXB less than $3,512,592.68 for the work performed by 77 Construction.

Plaintiff instituted this suit to recover the $981,821.13 that UXB has received from the federal government on 77 Construction's behalf but has not paid to 77 Construction. Plaintiff asserts three claims in this diversity[1] action: Count 1 is a breach of contract claim, Count 2 is a

---

[1] The Court is doubtful that federal question jurisdiction lies, as claimed in the complaint, for breach of the Federal Acquisition Regulations, especially given that the Court below dismisses Count 3, a claim for breach of these regulations. See C&H Contracting of MS, LLC v. Lakeshore Eng'g Services, Inc., No. 1:07CV700, 2007 WL 2461017, at *2 (S.D. Miss. Aug. 24, 2007) (remanding a case to state court for lack of federal question jurisdiction

*quantum meruit* claim pleaded in the alternative "[t]o the extent that the Contract is and the Purchase Orders are found to be void, voidable, or otherwise modified, and to avoid unjust enrichment," and Count 3 is a claim for breach of the Federal Acquisition Regulations ("FAR"). Defendant filed a Motion to Dismiss Counts 2 and 3 and to Strike Count 3. ECF No. 4. Defendant argues that, as to Count 2, a *quantum meruit* and breach of contract claim cannot both be pursued, and as to Count 3, that there is no private right of action for a breach of the Federal Acquisition Regulations. Defendants also move that Count 3 be stricken from the Complaint.

## II. LEGAL STANDARDS

The standard on a motion to dismiss is familiar: to survive a motion to dismiss, the plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft, 556 U.S. at 678).

On a motion to strike, Rule 12(f) allows a district court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion is most often used for "objecting to an insufficient defense." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993). "[E]ven when technically

---

because using "federal regulations as a measuring rod with which the factfinder can gauge evidence of state-law claims [such as] breach of contract ... is insufficient to support federal question jurisdiction"). Nevertheless, subject matter jurisdiction appears to be proper on the basis of diversity. See 28 U.S.C. § 1332(a)(2).

3

appropriate and well-founded, [motions to strike] often are not granted in the absence of a showing of prejudice to the moving party." United States v. Pretty Prods., Inc., 780 F. Supp. 1488, 1498 (S.D. Ohio 1991).

## III. ANALYSIS

### A. Motion to Dismiss as to Count 2

The parties agree that Virginia law governs this suit. Therefore, the Court looks to Virginia law to determine if a breach of express contract claim may exist simultaneously with a *quantum meruit* claim. The rule in Virginia is settled: "One cannot obtain *quantum meruit* relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question." Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir. 1992). "[T]here can be no recovery in *quantum meruit* where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms." Vollmar v. CSX Transp., Inc., 705 F. Supp. 1154, 1176 (E.D. Va. 1989) (quoting In re Stevenson Assocs., Inc., 777 F.2d 415, 421-22 (8th Cir. 1985)), aff'd, 898 F.2d 413 (4th Cir. 1990). However, it is only after a valid and binding express contract is acknowledged by the parties or the Court that this rule attaches. See, e.g., Raymond, 961 F.2d at 491 (finding Vollmar "inapposite" because the parties did not enter into an express contract); Mendoza v. Cederquist, No. 1:09cv163, 2009 WL 1254669, at *3 (E.D. Va. May 6, 2009) (noting that pleading both an express breach of contract claim and a *quantum meruit* claim is "eminently reasonable" when "parties may disagree as to both the existence and the scope of any contract"); Centex Constr. v. Acstar Ins. Co., 448 F. Supp. 2d 697, 707-08 (E.D.

Va. 2006) (denying a motion to file a *quantum meruit* counterclaim, noting that where the parties "remained in a contractual relationship . . . at all relevant times," *quantum meruit* is unavailable).

The key question, here, therefore, is whether the parties remained in a contractual relationship at all relevant times; or, in other words, whether the contract between the parties encompasses all potential sources of recovery for the Plaintiff. The Complaint certainly makes clear the Plaintiff's belief that it can obtain all requested relief on the breach of contract claim. See ECF No. 1 at ¶¶ 7-19. In fact, Plaintiff has only pleaded Count 2 in the event the contract is "found to be void, voidable, or otherwise modified, and to avoid unjust enrichment." Id. at ¶ 23. Likewise, Defendant does not contest the validity of the contract between the parties, acknowledging in the Answer and reiterating at oral argument that "there is an express contract encompassing the entire relationship between the parties and all of Plaintiff's claimed damages."[2] ECF No. 6 at 7. Thus, the parties are in accord that they remained in a contractual relationship at all relevant times. See Centex, 448 F. Supp. 2d at 707-08. The Court finds then that a valid, express contract exists between the parties and therefore they "are entitled to have their rights and duties adjudicated exclusively by its terms." Vollmar, 705 F. Supp. at 1176. As such, Count 2, the *quantum meruit* claim, must be dismissed.

### B. Motion to Dismiss as to Count 3

Plaintiff alleges that UXB violated Federal Acquisition Regulations ("FAR") through non-payment of the amount due 77 Construction under the invoice submission process. The Plaintiff acknowledges that the regulations do not include an express private right of action, but requests that the Court imply a private right of action to remedy a FAR violation. Plaintiff points

---

[2] Plaintiff was under the impression, as stated in the Brief in Opposition, ECF No. 12 at 4, and at oral argument, that Defendant was contesting the validity of the contract.

5

to no indicia of congressional intent to create a private right of action to enforce a FAR violation, but argues that other factors provide grounds to imply a private remedy.

The Supreme Court initially announced a liberal approach to implying private rights of action in the absence of explicit support in the statutory text in J.I. Case Co. v. Borak, 377 U.S. 426 (1964). However, separation of powers concerns—namely, that federal courts were supplementing their own Article III jurisdiction without explicit congressional approval—led to a retreat from the high tide of Borak, beginning with Cort v. Ash, 422 U.S. 66, 78 (1975) (refusing to imply a private right of action for violation of 18 U.S.C. § 610, a criminal statute) and Cannon v. University of Chicago, 441 U.S. 677, 688 (1979) (implying a private right of action for Title IX, but only after noting that all of the Cort factors supported the recognition of an implied right of action). See also Cannon, 441 U.S. at 746 (Powell, J., dissenting) (judicial recognition of an implied right of action "runs contrary to the established principle that the jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation and conflicts with the authority of Congress under Art. III to set the limits of federal jurisdiction") (internal citations and punctuation omitted). Cort announced a four-factor test to determine if courts should imply a private right of action,[3] but the second factor—congressional intent to create a private right of action—has since become the dominant consideration. See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 164 (2008) ("[I]t is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one."); Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("The judicial task is

---

[3] The Cort test is (1) whether "the plaintiff [is] one of the class for whose especial benefit the statute was enacted," (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one," (3) whether "it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff," and (4) whether "the cause of action [is] one traditionally relegated to state law" "so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78.

to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (internal citations omitted).

The modern Supreme Court has been extremely reluctant to expand previously-recognized implied private rights of action or to recognize "new" implied private rights of action. See Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301-02 (2011) (construing narrowly a previously recognized private right of action under § 10(b) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78j(b))); Stoneridge Inv. Partners, LLC, 552 U.S. at 165 (same); Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (refusing to recognize a implied private right of action under § 602 of Title VI of the Civil Rights Act of 1964, even though an implied private right of action had previously been recognized under § 601 of the same statute).

Furthermore, an implied private right of action for violation of a regulation as opposed to a statute is even more difficult to establish, since there is often very little indication that Congress actually intended to create a private remedy.

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

7

Sandoval, 532 U.S. at 291 (internal citations omitted). In summary, Supreme Court jurisprudence has tended toward the non-recognition of implied private rights of action and this Court will be hesitant to imply one absent a strong indication that Congress intended to create a privately enforceable right.

It is clear that a breach of the Federal Acquisition Regulations, standing alone, cannot give rise to a private right of action. Plaintiff has pointed to no statutory language that authorizes, explicitly or implicitly, a private right of action. The Court's own extensive research has failed to identify any statutory basis from which to infer congressional intent to create a private remedy. Indeed, Plaintiff acknowledged at oral argument that there was no indication of congressional intent to confer a private right of action, but argued that the other Cort factors favored implying a private right of action. However, even if the other Cort factors pointed resoundingly toward recognition of an implied private right of action, the Court cannot imply this right when the predominant factor, congressional intent, is completely absent.

The fact that the violated standard was a regulation, not a statute, further underscores the complete lack of congressional intent to create a private right of action. Even if a private remedy could be inferred from a regulation, Plaintiff has pointed to no language in the pertinent regulations that purports to expressly create a private right of action. For these reasons, the Court holds that there is no private right of action to enforce a FAR violation. Accord Marini v. DragadosUSA, Inc., No. 11-11316-GAO, 2012 WL 4023674 (D. Mass. Sept. 11, 2012); Mountain State Mech. Insulation, Inc. v. Bell Constructors, No. 1:11CV180, 2012 WL 2995213 at * 2 (N.D. W. Va. July 23, 2012).

8

Because there is no congressional intent to create a private right of action for FAR violations, the Court must **GRANT** Defendant's Motion to Dismiss Count 3 of the Complaint.[4]

### C. Motion to Strike Count 3

Given that Count 3 has been dismissed, the Court will **DISMISS AS MOOT** the Defendant's Motion to Strike Count 3.

### IV. CONCLUSION

Because Defendants do not contest the validity of the contract, Plaintiff's remedy lies in a breach of contract claim. As such, the Court dismisses Count 2, the *quantum meruit* claim. Further, because no evidence of congressional intent can be found to infer a private right of action based on a FAR violation, Count 3 is also dismissed. The Motion to Strike Count 3 is dismissed as moot.

An appropriate order shall issue this day.

ENTER: This 22nd day of October, 2012.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge

---

[4] Even though the Court will not imply a private right of action based on alleged violations of the Federal Acquisition Regulations, counsel for Defendant noted at oral argument that many provisions of the regulations are incorporated into the prime contract, either by reference or by full text. As such, FAR violations could still constitute a breach of contract under Count 1.